UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MANUEL LEVY GRIEGO,

    Plaintiff,

v.                                                                             Civ. No. 15-1112 GJF

CAROLYN COLVIN, *Acting*
*Commissioner of the Social Security*
*Administration*,

    Defendant.

## **ORDER**

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing With Supporting Memorandum" ("Motion"), filed on July 21, 2016. ECF No. 18. The Commissioner responded on October 18, 2016. ECF No. 22. Plaintiff replied on November 3, 2016. ECF No. 23. Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

**I.    BACKGROUND**

Plaintiff was born on September 5, 1982, and grew up in both Grants and Albuquerque, New Mexico. Administrative R. ("AR") 438. He attended special education classes throughout his time in school, and ceased attending after the ninth grade. AR 35. Although he attempted the General Educational Development ("GED") test, he failed. AR 35. In the last fifteen years, he has held a variety of positions, including fast food worker, commercial remodeler, dishwasher, truck loader, and car detailer. AR 34-38, 163-65. In each case, save the commercial

remodeling job – which was temporary by nature – Plaintiff claims that he was terminated for not being "fast enough." AR 34-38.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging disability beginning on December 31, 2010, due to a learning disability, sleep apnea, headaches, and anxiety. AR 195. The Social Security Administration ("SSA") denied Plaintiff's application initially on July 14, 2011, and upon reconsideration on January 16, 2013. AR 52, 69. At his request, Plaintiff received a *de novo* hearing before ALJ Barry O'Melinn on February 12, 2014, at which Plaintiff, his attorney, and a vocational expert ("VE") appeared. AR 29-49. On July 10, 2014, the ALJ issued his decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 11-23. Plaintiff appealed to the SSA Appeals Council, but it declined review on October 6, 2015. AR 1-3. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2016).

Plaintiff timely filed his appeal with the U.S. District Court on December 9, 2015. ECF No. 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff advances two grounds for relief. First, he argues that the ALJ failed to appropriately weigh the opinion of consultative examining psychologist Dr. David LaCourt, Ph.D. Pl.'s Mot. 14-19, ECF No. 18. Additionally, he contends the ALJ's "step five" decision is not supported by substantial evidence. *Id.* at 19-23.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision

becomes the final decision of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Substantial evidence does not, however, require a preponderance of the evidence.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084.  The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016).  At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1.  If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC").  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e).  In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work.  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If a claimant is not prevented from performing his past work, then he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy.  *See Thomas*, 540 U.S. at 24-25; *see also*

*Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.   THE ALJ'S DECISION

The ALJ issued his decision on July 10, 2014.  AR 23.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 31, 2010.  AR 13.  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) obesity; (2) obstructive sleep apnea; (3) hypertension; (4) hyperlipidemia; (5) a neck disorder; (6) anxiety; and (7) an organic mental disorder.  AR 13.  In tandem with these findings, the ALJ also found Plaintiff's headaches, post-surgical back problems, hemorrhoids, and polysubstance abuse to be non-severe.  AR 14.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14-16.  This finding included an analysis of Plaintiff's mental impairments, which the ALJ found did not meet or medically equal the criteria of Listing Sections 12.02 (organic mental disorders) or 12.06 (anxiety-related disorders).  AR 47-49.

The ALJ found that the paragraph B criteria of Listings 12.04 and 12.06[2] were not met "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration."  AR 16.  He then explained his reasoning regarding paragraph B's four subparts, beginning with

---

[2] Paragraph B of Listings 12.02 and 12.06 (which is identical in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description.  To meet either of these two Listings, a claimant must exhibit at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), 12.06(B) (2016).

activities of daily living.  There, the ALJ found Plaintiff to have only a mild restriction.  Among other things, the ALJ observed that Plaintiff "takes care of his son, attends to his personal care needs, vacuums, sweeps, makes beds, does yard work, drives, shops, plays basketball with his son, waters, goes to the movies, and spends time with others."  AR 15 (citing AR 205-10).  Additionally, he noted "the state agency psychological consultant found mild limitation in this area."  AR 15.  As to social functioning, the ALJ also found Plaintiff had only mild difficulties.  He noted that Plaintiff "did not allege any particular difficulty getting along with people," and recounted again how Plaintiff "reported playing basketball with his son, going to the movies, and spending time with others."  AR 15 (citation omitted).  Nonetheless, the ALJ did find, albeit reluctantly, that Plaintiff had moderate difficulties with concentration, persistence, and pace.  In fact, while the ALJ described Plaintiff's claims of "difficulty remembering things, completing tasks, concentrating, understanding, and following instructions," he quickly contrasted these allegations with Plaintiff's activities of daily living.[3]  This discrepancy, coupled with the state agency psychological consultant's finding of moderate limitations, persuaded the ALJ to find only a "moderate difficulties" in this area.  AR 15.  The ALJ concluded his paragraph B discussion by finding that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration."  AR 16.

The ALJ similarly found that the evidence in Plaintiff's case "fails to establish the presence of 'paragraph C' criteria."[4]  AR 16.  He based his finding on the lack of evidence "to

---

[3] These activities of daily living, detailed previously *supra*, referred to how Plaintiff "takes care of his son, attends to his personal care needs, vacuums, sweeps, makes beds, does yard work, drives, shops, plays basketball with his son, waters, goes to the movies, and spends time with others."  AR 15.

[4] Paragraph C of Listings 12.02 and 12.06 (which is identical in both) describes mental disorders that are serious and persistent.  To qualify under this paragraph in either Listing, a claimant must have a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

show that [Plaintiff] has had any episodes of decompensation" and the absence of "any evidence in the record to show he would decompensate if he experienced minimal increases in mental demands or a change in environment."  AR 16.  Additionally, the ALJ noted Plaintiff has "been able to function outside of a highly supportive living arrangement."  AR 16.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC.  AR 16-20.  "After careful consideration of the record," the ALJ determined that "[Plaintiff] has the residual functional capacity to perform light work" with the following limitations:

> occasionally climb ramps, stairs, ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; can understand, remember, and carry out simple instructions and make commensurate work-related decisions; can respond appropriately to supervision, coworkers, and work situations; can deal with routine changes in the work setting; and, can maintain concentration, persistence[,] and pace for up to an[d] including two hours at a time with normal breaks throughout the normal workday.

AR 16.

To develop Plaintiff's RFC, the ALJ relied on three principal grounds.  First, the ALJ accorded "significant" weight to the opinion of consultative examining psychologist Marita Delaney, Ph.D.  AR 20.  The ALJ approvingly cited her opinion that Plaintiff had:

> Mild [limitations] in his ability to understand and remember instructions. His ability to follow complex instructions was markedly limited.  His concentration and persistence regarding work tasks was [sic] mildly limited.  He had no limits with the public, coworkers[,] or supervisors. His ability to adapt to changes in the workplace was mildly limited and the doctor assigned a [Global Assessment of Functioning ("GAF") score] of 60.

---

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C), 12.06(C).

AR 20 (citing AR 438-40). Following his review of the record, the ALJ found this opinion to be "consistent with the credible evidence in the case." AR 20.

Second, and in contrast, the ALJ assigned "little weight" to the opinion of consultative examining psychologist David LaCourt, Ph.D, who had recommended greater limitations on Plaintiff's ability to work. AR 17-18. Following two examinations of Plaintiff – one in 2009, and the other in 2011 – Dr. LaCourt had found Plaintiff possessed "moderate limitation in understanding and remembering detailed/complex instructions, sustaining concentration and persistence for carrying out instructions, interacting with coworkers, and adapting to changes in the workplace." AR 20 (citing AR 355-57). More importantly, he found a "marked limitation associated with task impersistence." AR 20. The ALJ discounted this opinion, however, finding it "inconsistent with [Plaintiff's] demonstrated ability to work in the past, to perform activities of daily living[,] and with the opinion of Doctor Delaney." AR 20.

Third, the ALJ found Plaintiff to be "generally incredible." AR 18. He recounted Plaintiff's self-described allegations of headaches, dizziness, lightheadedness, spinning sensations, falls, double vision, numbness, clumsiness, confusion, and difficulties with speech, memory, task completion, concentration, and following instructions. AR 17. "Despite these allegations," the ALJ opined, Plaintiff "takes care of his son, attends to his personal care needs, vacuums, sweeps, makes beds, does yard work, drives, shops, plays basketball with his son, waters, goes to the movies, and spends time with others." AR 17. In the ALJ's estimation, these activities of daily living were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens the credibility of his allegations." AR 17. "Turning to the medical evidence," the ALJ further found that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and

limitations." AR 17. Additionally, having "found many aspects of [Plaintiff's] testimony incredible," the ALJ went on to detail inconsistencies in Plaintiff's testimony that supported his negative credibility findings. These included, *inter alia*: (1) Plaintiff's testimony of being illiterate, despite numerous physicians' reports, tests, and evidence to support his ability to read and write at an elementary level; (2) Plaintiff's claim of being able to maintain employment for nearly two years as a car detailer only because of his mother's relationship with the manager, despite any evidence to support that fact; and (3) Plaintiff's report that he cannot afford to treat his allegedly severe back pain, despite seeking treatment for other conditions. AR 17-18.

At step four, the ALJ found that Plaintiff could not perform any past relevant work, based on the VE's testimony that "the demands of [Plaintiff's] past work exceed the residual functional capacity." AR 21. Accordingly, the ALJ proceeded to step five. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 21-22. These jobs, as described by the VE, Pamela A. Bowman, included hand cleaner/polisher, laundry folder, and assembler. AR 22. Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied the claim. AR 22.

## V. ANALYSIS

As set forth below, Plaintiff has failed to marshal sufficient support from facts or case law to establish that the ALJ applied incorrect legal standards or that his decision is unsupported by substantial evidence. Consequently, his Motion must be denied. The Court's reasoning as to each of Plaintiff's two claims follows.

### A. The ALJ Properly Evaluated the Opinion of Dr. LaCourt

Plaintiff begins his attack on the ALJ's decision by pronouncing that "Social Security law in regard to medical opinion evidence is unambiguous: **[a]ccept and include or reject and explain**." Pl.'s Mot. 14 (emphasis in original).  He then explains, "[i]f an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why that opinion was not adopted." *Id.* at 15 (citing Social Security Ruling ("SSR") 96-8, 1996 WL 374184, at *4 (July 2, 1996)).  "Inaccurate or conclusory explanations," Plaintiff cautions, "are not sufficient." *Id.* Plaintiff then goes on to explain that the ALJ "rejected Dr. LaCourt's assessment for reasons that are neither adequate or legitimate." *Id.* at 16 (citations omitted).

To craft his challenge to the ALJ's findings, Plaintiff first identifies the three bases upon which he believes the ALJ rejected Dr. LaCourt's assessments: (1) they are inconsistent with Plaintiff's demonstrated ability to work in the past; (2) they are inconsistent with Plaintiff's ability to perform activities of daily living; and (3) they are inconsistent with the opinion of Dr. Delaney. *See id.* at 16.  Then, he assails each ground sequentially.  Regarding the ALJ's first ground for discounting Dr. LaCourt's opinion, Plaintiff claims "[t]his reason is not legitimate without a specific explanation of what [the ALJ] means 'by ability [to] work in the past.'" *Id.* at 17.  Plaintiff claims that "this line of reasoning . . . would invalidate every claim for disability, since the majority of claimants have worked in the past." *Id.*  Turning to the ALJ's mention of Plaintiff's activities of daily living as undercutting Dr. LaCourt's opinion, Plaintiff claims the ALJ *never* specified the activities of daily living in question. *Id.* at 18.  Lastly, he challenges the ALJ's finding that Dr. LaCourt's opinion was inconsistent with that of Dr. Delaney, positing that "[t]his is not a facially valid reason to reject Dr. LaCourt's findings." *Id.*  By his estimation, the ALJ's "findings here are once again made without sufficient explanation," and moreover, "[t]he

opinion of each consultative examiner should be contrasted with the record and not against each other." *Id.* (citing 20 C.F.R. § 404.1527 (2016)).

The Commissioner counters by arguing "the ALJ weighed Dr. LaCourt's opinions – along with the other mental medical source opinions and the rest of the evidence – and reasonably assessed Plaintiff's mental residual functional capacity." Def.'s Resp. 9, ECF No. 22. By the Commissioner's reading, "[t]he ALJ's opinion demonstrates that he considered the entire record, which showed that Plaintiff carried on relatively normal activities of daily living." *Id.* The Commissioner emphasizes that "no treating source indicated that Plaintiff had any mental (or physical) work-related limitations, much less that he could not even perform simple tasks." *Id.* at 9-10 (citation omitted). Furthermore, she underscores that the RFC assigned by the ALJ conforms not only to the opinion of consultative psychologist Dr. Delaney, but also to the opinions of the reviewing agency physician, Dr. Elizabeth Chiang, M.D., and psychologist, Dr. Judith LaMarche, Ph.D. *Id.* at 11 (citing AR 63-64 (Dr. Chiang) and AR 373-75 (Dr. Lamarche)). Ultimately, the Commissioner reasons, "[w]hile Plaintiff may disagree with the reasons given by the ALJ for giving Dr. LaCourt's opinions little weight . . .the ALJ's reasons were sufficiently articulated and supported by substantial evidence in the record." *Id.* at 12.

Governing regulations require that "[r]egardless of its source," an ALJ "will evaluate every medical opinion" received. 20 C.F.R. § 404.1527(c). The same regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2). Social Security Ruling 96-6p also provides guidance on how to consider opinions of consultative examiners, including opinions of

psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Specifically, it directs that findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id*. at *1. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions. *Id.* at *2. Yet, because opinions of consultative examiners are weighed by stricter standards than those who are treating sources, SSR 96-6p mandates as follows:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

Based on relevant regulations and rulings, this Court finds no error in the ALJ's evaluation of Dr. LaCourt's opinion. SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's opinions. In this case, the ALJ did exactly that; he assigned little weight to Dr. LaCourt's opinion and proceeded to articulate his reasons for doing so. AR 20. Therefore, this Court finds substantial evidence to support his opinion.

Although Plaintiff takes exception with the ALJ's rationale for discounting Dr. LaCourt's opinion, his arguments for reversal fail to persuade this Court. At first blush, each appears compelling, and were they considered in isolation, they might prove so. But, despite Plaintiff's claims, the ALJ's mention of Plaintiff's prior work history was not some grievous error that threatened to "invalidate every claim for disability." *See* Pl.'s Mot. 10. Rather, Plaintiff's work history represented only one component of the record as a whole, which the ALJ was bound by

SSR 96-6p to consider. *See* SSR 96-6p, 1996 WL 374180, at *2. In this case, that history was especially salient, since Plaintiff makes no claim to further diminishment of his mental capacity following the period of his gainful employment.

Similarly, in reviewing the opinion of a consultative examiner like Dr. LaCourt, the ALJ was bound by Ruling 96-6p to measure Dr. LaCourt's opinion against not only the record as a whole, but particularly *against other medical opinions in the record*. *See* SSR 96-6p, 1996 WL 374180, at *2 (requiring an ALJ to weigh the consistency of a consultative examiner's opinion "with the record as a whole, including other medical opinions"). Thus, instead of constituting reversible error – as Plaintiff contends – the ALJ's comparison of Dr. LaCourt's opinion to that of Dr. Delaney was a proper application of SSR 96-6p.

Lastly, Plaintiff's argument that the ALJ failed to specify which of Plaintiff's activities of daily living conflict with Dr. LaCourt's opinion is flatly refuted by the record. *See* Pl.'s Mot. 18. Indeed, on *three* separate occasions, the ALJ recited the following litany of activities: "[Plaintiff] takes care of his son, attends to his personal care needs, vacuums, sweeps, makes beds, does yard work, drives, shops, plays basketball with his son, waters, goes to the movies, and spends time with others." AR 15, 17. He also reasoned that Plaintiff, who self-reported these activities, AR 205-10, "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens the credibility of his allegations." AR 17. Given these apparent and repeated references, the Court does not understand how Plaintiff could advance this argument.

Whether the Court would have evaluated Dr. LaCourt's opinion differently if it were reviewing the evidence de novo is not the question. The Court is constrained to reviewing whether the ALJ erred as a matter of law in its treatment of Dr. LaCourt's opinion. It is not the

proper role of this Court to substitute its judgment for that of the ALJ.  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).  It is the Court's role, however, only to determine if the ALJ properly explained his reasoning for assigning little weight to the opinion of Dr. LaCourt, a consultative examining psychologist.  The Court finds that the ALJ properly considered Dr. LaCourt's opinion, assigned it the weight he felt it warranted, discounted it due to other evidence in the record, and satisfactorily explained his reasoning.

### B. The ALJ's Step Five Finding Is Supported by Substantial Evidence

In his second allegation of error, Plaintiff avers that the ALJ's step five finding is not supported by substantial evidence.  Fundamentally, he argues "[t]here is no way of reliably verifying the accuracy of the number of jobs available in the national economy" for the three jobs discussed by the VE. Pl.'s Mot. 20.  Each of these professions, he argues, is but a subcategory of a larger Occupational Employment Statistics ("OES") grouping,[5] and by his calculations, the numbers suggested by the VE correspond to the larger OES grouping, rather than the subcategories corresponding to the professions' DOT numbers.  *See* Pl.'s Mot. 20-22.

The Commissioner contests Plaintiff's claim, and posits that "the ALJ was entitled to rely on the vocational expert's testimony – based on his vocational expertise and the DOT – in finding jobs existed in the national economy that Plaintiff could perform despite his limitations." Def.'s Resp. 13.  She also cites to *Ellison v. Sullivan* to support her conclusion that "the

---

[5] The Occupational Employment Statistics ("OES") Survey is a federal-state cooperative program between the U.S. Department of Labor's Bureau of Labor Statistics and the state workforce agencies that provides national occupational employment and wage rate estimates.  *See Anders v. Colvin*, No. 2:14-CV-00610-EJF, 2015 WL 5555745, at *13 (D. Utah Sept. 18, 2015) (unpublished) (citation and internal quotation marks omitted); *Guidry v. Astrue*, No. 08-CV-01846-PAB, 2009 WL 4884282, at *5 (D. Colo. Dec. 10, 2009) (unpublished).  Job data in the OES naturally varies from the DOT, as the OES classifies jobs by census codes, known as Standard Occupational Classification ("SOC") codes, rather than DOT codes.  *McDonald v. Colvin*, No. CIV-14-220-SPS, 2015 WL 5749392, at *2 (E.D. Okla. Sept. 30, 2015) (unpublished).

vocational expert's testimony constitutes substantial evidence in support of the ALJ's decision and should not be disturbed on review." *Id.* at 14 (citing *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990)).

At its core, this claim arises from the testimony of VE Bowman, who testified that someone with Plaintiff's assigned RFC could perform three separate jobs. *See* AR 45-49. The first she identified was "hand cleaner/polisher," Dictionary of Occupational Titles ("DOT")[6] number 709.687-010. For that profession, she identified 71,000 jobs in the national economy, and 125 in New Mexico. AR 45. She then advanced the position of "laundry folder," DOT number 361.587-010. In that case, she identified 40,500 jobs in the national economy and 130[7] jobs in New Mexico. AR 45. Lastly, she suggested that Plaintiff could work as an "assembler," DOT number 706.684-022. As to this occupation, she indicated there were 300,000 jobs in the national economy, and 260 jobs in New Mexico. AR 45.

VE Bowman's reference to jobs in the national economy and the State of New Mexico is typical of the evidence received in cases across the Tenth Circuit, where both the ALJ and the reviewing court typically rely on VE testimony about two categories of jobs: (1) those existing in the national economy, and (2) those existing in the regional economy or the state of filing. *See, e.g.,* Order, Sep. 29, 2016, ECF No. 25, at 30, *Ryan v. Colvin*, Civ. No. 15-740 KBM (D.N.M. filed Aug. 24, 2015) (unpublished) (describing VE testimony on jobs in the national economy and regional economy); *Pursley v. Colvin*, No. CIV-15-276-SPS, 2016 WL 5408154, at *2 (E.D. Okla. Sept. 28, 2016) (unpublished) (noting ALJ's finding that claimant could perform other

---

[6] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2016). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2016).

[7] In the transcript of the administrative hearing, Ms. Bowman was transcribed as identifying 130,000 laundry folder jobs in the State of New Mexico. Clearly, this was an error, as she had identified a total of 40,500 laundry folder jobs in the national economy. *See* AR 45. Recognizing the mistake, the Administrative Law Judge ("ALJ") corrected the error in his ruling and corrected the number to 130 jobs in the State of New Mexico. *See* AR 22.

15

work in the regional or national economy); *Kummer v. Colvin*, No. 2:15-CV-00318-DBP, 2016 WL 4691588, at *5 (D. Utah Sept. 7, 2016) (unpublished) (discussing VE testimony of positions available nationally and regionally); *Wright v. Colvin*, No. CIV-15-558-BMJ, 2016 WL 4077244, at *2 (W.D. Okla. July 29, 2016) (noting the ALJ's reliance on VE testimony to find jobs existed in significant numbers in the regional and national economies). The focus on jobs in *either* the national economy or regional economy is a reflection of unique Tenth Circuit case law, which allows an ALJ to make step five findings based on a determination of whether work exists in significant numbers in the regional *or* national economy, while still acknowledging "that the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

Whether or not VE Bowman's numbers derive from OES groupings, however, is another matter. On that point, the record is silent, and Plaintiff has offered no evidence to support his theory that the VE's numbers are derived from an entire OES grouping. What online citations he does offer support nothing more than the fact that the "Occupational Information Network" ("O*NET") does define both categories of jobs and subcategories containing more specific job titles. *See* Pl.'s Mot. 21-22 nn.19-25. In fact, despite having the opportunity to do so, at no point in his cross-examination of Ms. Bowman did Plaintiff's attorney inquire as to her methodology. *See* AR 47-49. Instead, he has simply assumed her numbers represent OES groupings, and without support in fact or law, asked this Court to reverse the ALJ's decision. The Court declines that invitation, along with the inference that Plaintiff asks the Court to draw.

The *only* record evidence concerning the number of jobs available to Plaintiff in the national economy is the testimony of VE Bowman. Under Tenth Circuit precedent, the ALJ may

properly rely on such testimony to support a step five finding.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1334 (10th Cir. 1992).  Despite ample opportunity, Plaintiff did not introduce anything approaching sufficient evidence to contradict her testimony.  Accordingly, the Court finds the ALJ's step five analysis to be supported by substantial evidence, and as a consequence, this claim must be denied.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 18] **IS HEREBY DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **HEREBY AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*